UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

ANH NGOC VO, ET AL                                    CIVIL ACTION

VERSUS                                                NO. 12-1341

CHEVRON U.S.A., INC., ET AL                           SECTION  "N"  (3)

## ORDER AND REASONS

Before the Court is Plaintiff's Motion to Remand (Rec. Doc. 20).  The defendants have

filed a joint opposition memorandum (Rec. Doc. 44).

## I. BACKGROUND:

Plaintiffs, Anh Ngoc Vo, Nga Vo, and Kurtis Tinh Vo, commenced this action in the

Twenty-Fifth Judicial District Court for the Parish of Plaquemines, State of Louisiana, against

defendants Chevron U.S.A., Inc., Chevron Pipeline Company, ExxonMobil Oil Corporation,

ExxonMobil Pipeline Company, ExxonMobil Production Company, the State of Louisiana, Shell

Oil Company, Shell Pipeline Company LP, Plains Pipeline, L.P., Plains Marketing, L.P. and

Plains All American Pipeline, L.P..  (*See* Rec. Doc. 1-2).   Plaintiffs seek compensatory and

punitive damages relating to an alleged allision on April 21, 2009, whereby plaintiffs'

commercial fishing vessel (the *F/V Miss Kimberly*) struck an unmarked, submerged, unburied

pipeline and sank near the end of Empire Canal in Plaquemines Parish, Louisiana.  Plaintiffs

allege that each of the defendants owned, operated, or had custody of the pipeline.

The Shell defendants removed the action to this Court on the basis of diversity jurisdiction, asserting that the two non-diverse defendants, the State of Louisiana and Plains All American Pipeline, L.P. ("PAALP"), are improperly joined.[1]  (Rec. Doc. 1).   After plaintiffs filed the instant motion to remand, the parties conducted very limited discovery targeted to ascertaining where the alleged allision occurred, for the purpose of determining whether either of the non-diverse defendants owned or operated any pipelines in the area near the alleged allision. *See* Rec. Docs. 23 through 38.  Plaintiffs subsequently dismissed their claims against the two Shell defendants and the three Plains defendants, including PAALP.[2]  (Rec. Docs. 42, 43, 45, 46).  They have maintained their claims against the State of Louisiana, the ExxonMobil defendants, and the Chevron defendants.

---

[1]  The citizenship of PAALP at the time of removal is unclear.  The affidavit of a PAALP officer attests that PAALP is a Texas limited partnership with its principal place of business in Texas.  However, no party has put forth the citizenship of PAALP's partners or argued that PAALP is not a Louisiana citizen for purposes of diversity jurisdiction.  Further, the defendants argue in both their Notice of Removal and in their opposition memorandum that the plaintiffs have no viable cause of action against PAALP.  *See* Rec. Docs. 1 ¶ XX; 44 at pp. 11-12.  Given that it is the defendants' burden to prove the requisites of jurisdiction, the Court will assume for purposes of this motion that PAALP  is a citizen of Louisiana.

[2]  Although post-removal dismissal of a non-diverse defendant can cure a prior jurisdictional defect, it does not cure statutory defects in the removal.  *See Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 572-74 (2004) (citing *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 73-75 (1996)).  Nevertheless, a handful of courts, relying on *Caterpillar*, have denied remand on the basis of post-removal dismissal of the diversity-destroying defendant.  *See, e.g.*, *Dale v. First American Nat. Bank,* 370 F. Supp. 2d 546, 550-51 (S.D. Miss. 2005); *Chaney v. First American Nat. Bank,* 2009 WL 275198 (M.D. Tenn. 2009); *Weaver v. Murry*, 2006 WL 1968912 (E.D. La. 2006).  Neither party has addressed the issue, and the Court need not reach it, for it finds PAALP to have been improperly joined, as explained below.

## II.  LAW AND ANALYSIS:

"To remove a case based on diversity, the diverse defendant must demonstrate that all of the prerequisites of diversity jurisdiction contained in 28 U.S.C. § 1332 are satisfied." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 572 (5th Cir.2004) (en banc).  Further, no properly joined, served defendant may be a "citizen of the State in which such action is brought." 28 U.S.C. § 1441(b).  Here, there is no dispute that the matter in controversy exceeds $75,000. *See* 28 U.S.C. § 1332.  The sole issue is whether there is complete diversity — *i.e.*, whether the citizenship of each defendant is diverse from that of each plaintiff.  *See, e.g., Vela v. Manning*, 469 Fed. Appx. 319 (5th Cir. 2012) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806)).

### A.  The Test for Improper Joinder:

"The doctrine of improper joinder is a 'narrow exception' to the rule of complete diversity, and the burden of persuasion on a party claiming improper joinder is a 'heavy one.' " *Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 669 (5th Cir. 2007) (quoting *McDonal v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir.2005) (internal quotation omitted)).  "Improper joinder may be established by either '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.' " *Menendez v. Wal-Mart Stores, Inc.*, 364 Fed.Appx. 62, 68 (5th Cir. 2010) (quoting *Smallwood*, 385 F.3d at 573).  Here, the defendants do not contend that the plaintiffs fraudulently pleaded jurisdictional facts, and only the second form of improper joinder is at issue.  Thus, the test is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an

in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood*, 385 F.3d at 573.   "If there is arguably a *reasonable basis* for predicting that the state law might impose liability on the facts involved, then there is no fraudulent joinder.  This *possibility, however, must be reasonable*, not merely theoretical."  *Travis v. Irby*, 326 F.3d 644, 648 (5th Cir. 2003) (emphasis in original) (quoting *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002)).

In "predicting whether a plaintiff has a reasonable basis of recovery under state law," the "court may resolve the issue in one of two ways":   (1) "The court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant;" or (2) in cases where it appears that the "plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder," the Court "may, in its discretion, pierce the pleadings and conduct a summary inquiry."  *Smallwood*, 385 F.3d at 573.  Where the Court finds the latter approach to be warranted, it may "consider summary judgment-type evidence to determine whether the plaintiff has a basis in fact for the claim."  *Campbell*, 509 F.3d at 669.  However, the purpose of the summary inquiry is solely "to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant."  *Smallwood*, 385 F.3d at 573-74.  The focus is on the propriety of joinder, not the merits, and the plaintiffs' motive for joining the in-state defendant is irrelevant.  *Id.*  Further, "the court must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light

4

most favorable to the plaintiff" and "must resolve all ambiguities of state law in favor of the non-removing party."  *Campbell*, 509 F.3d at 669 (internal quotations omitted).

### B. <u>Applicable Louisiana Law of Tort Liability</u>:

In their complaint, the plaintiffs allege that the pipeline in question was "owned, maintained, put in place and/or in the care, custody and control of" each of the eleven defendants, including the State of Louisiana and PAALP, and that through their negligence and negligence *per se*, the defendants created and maintained a hidden obstruction and hazard, which caused the allision and the plaintiffs' damages.  *See* Complaint at ¶¶ VI, VIII (Rec. Doc. 1-2). Plaintiffs allege that the defendants' negligence included:  (1) failing to maintain warnings for the dangerous, hidden, unmarked, submerged, and unburied pipeline, in a navigable waterway; (2) failing to bury and/or remove the dangerous pipeline; (3) failure to repair the pipeline; (4) failing to properly mark and/or otherwise signal vessel operators of the presence of the pipeline; (5) building, maintaining, and/or allowing their pipeline to create a hazardous condition and/or impediment to navigation; (6) failing to exercise proper care, custody, and control over the pipeline; (7) placing a hidden, unmarked, submerged, and unburied pipeline in a navigable waterway and in failing to properly construct any type of warning system for vessel operators; (8) failing to operate, repair, and/or maintain their pipeline in a prudent manner; and (9) violating laws and regulations governing the removal of abandoned pipelines in waterways..  *See* Complaint at ¶¶ VII, XI (Rec. Doc. 1-2).

In addition, with respect to the State of Louisiana specifically, the plaintiffs allege that the State "refused and/or failed to enforce governmental rules, regulations and statutes,

concerning the dereliction, abandonment and/or removal of ruined and dangerous hydrocarbon related structures placed in waterways of this state and particularly, pipelines connected to and/or associated therewith." *Id.* at ¶¶ XIV, XV.

   1. **Absence of Duty**:

  With regard to the plaintiffs' claim that the defendants were negligent in failing to bury, mark, warn, or maintain, etc., defendants argue that plaintiffs have no possibility of recovering from the non-diverse defendants because neither the State nor PAALP owned, operated, or had custody, care, or control over any pipeline in or near the area.  Therefore, the defendants argue, there is no basis for finding a duty owed by either the State or PAALP with respect to the pipeline and thus no possibility of recovery from these two defendants.

  Under Louisiana law, the "threshold issue in any negligence action is whether the defendant owed the plaintiff a duty." *Lemann v. Essen Lane Daiquiris, Inc.*, 923 So. 2d 627, 633 (La. 2006).  Duty is the very cornerstone of tort liability.  Without it, there can be no possibility of recovery.  Thus, the first question in any negligence action is:  "[G]iven the relationship and circumstances of the parties, does the law impose upon the defendant a duty of reasonable conduct for the benefit of the plaintiff, the violation of which is considered to be fault?" *Pitre v. Opelousas Gen. Hosp.*, 530 So. 2d 1151, 1155 (La. 1988).

  With regard to PAALP the analysis is straightforward.  The defendants have submitted the affidavit of a PAALP officer, who attests that PAALP does not own or operate any pipelines and that the only pipeline owned by any Plains entity in the general area is five miles north of the allision location.  Rec. Doc. 44-2.  On this basis, they argue that PAALP could not have owed

plaintiffs any duty with respect to the pipeline.  Plaintiffs offer nothing to challenge this

evidence.[3]  Nor do the plaintiffs offer any other facts that would support the imposition of a duty

on PAALP with respect to the plaintiffs and the pipeline in question.  Thus, the Court can find no

reasonable basis for predicting that plaintiffs might be able to recover against PAALP.

    With respect to the State, plaintiffs assert that the pipeline, as an inactive and/or

abandoned structure, "had become the (owned) property of the State of Louisiana, who was

responsible for its *guarde* and who was likewise negligent as outlined in the Petition."  Rec. Doc.

20-1 at pp.2-3.  In response, defendants have submitted the affidavit of Brent Campbell,

employed by the State of Louisiana, Department of Natural Resources, Office of Conservation,

as Director of the Pipeline Division.  *See* Rec. Doc. 44-1.  Mr. Campbell attests that "the State

did not, on April 21, 2009, nor does it now, have any pipelines in its ownership, care, custody or

control."  *Id.* at ¶ 9.  Plaintiffs have offered nothing to refute this evidence.

    Further, the law of Louisiana is clear that ownership of inactive pipelines does not

devolve to the State absent specific affirmative actions on the part of the State.  *See* La. Civ.

Code art. 493 ("Until such time as the owner of the land appropriates the improvements [through

written demand and, ninety days thereafter, separate written notice of intent to appropriate], the

improvements shall remain the property of he who made them and he shall be solely responsible

for any harm caused by the improvements."); *see also Giorgio v. Alliance Operating*

*Corporation*, 921 So. 2d 58, 73-75 (La. 2006) (upon termination of state mineral lease,

---

[3] Indeed, plaintiffs have dismissed their claims against each of the Plains entities, including PAALP.  *See* Rec. Docs. 43, 46.

ownership of structures made by the lessee remain the property of the lessee until 90 days after written notice; in the absence of such notice, ownership of constructions remains with "him who made them").   Likewise, custody or *guarde* for purposes of liability under Civil Code article 2317 requires facts demonstrating: 1) "actual acts of direction and control other than regulation," and 2) that the State derived a benefit from the thing.  *Id.* at 78.  Although abandonment of the structure might arguably grant the State the authority to direct and control the site, it must actually exercise such authority to have *guarde*, and mere regulatory activity is not enough.  *Id.*; *see also Price v. Tenneco Oil Co.*, 996 So. 2d 1260, 1264-66 (La. Ct. App. 3d Cir. 2008).

Plaintiffs point to language in *Giorgio* in which the court left open the possibility that the State might, under certain facts, be found to have exercised its authority to direct and control. *See* 921 So. 2d at 78 ("This is not to say that the State may never be found to exercise its authority to direct and control.  Rather, we find that State is not liable when the State merely engages in regulatory activity....").  However, the question before this Court is whether, based on the facts in this case, "there is arguably a *reasonable basis* for predicting that the state law might impose liability on the facts involved."  *Travis,* 326 F.3d at 648 (emphasis in original) (citation omitted).  As the Fifth Circuit has emphasized, this possibility "*must be reasonable*, not merely theoretical."  *Id.* (emphasis in original) (citation omitted)*.*  Here, the plaintiffs have offered no facts tending to show that the State took any of the affirmative actions necessary to acquire ownership of the pipeline structure in question.  Nor have they offered any facts demonstrating that the State engaged in any acts of direction and control as required to establish *guarde*. Moreover, they have offered no evidence to refute the defendants' evidence that the State did not

have ownership, care, custody, or control over the pipeline.  *See* Rec. Doc. 44-1.   Accordingly,

the Court can find no reasonable basis for predicting that the plaintiffs might be able to recover

against the State on the basis of ownership, custody, or *guarde* of the pipeline.

### 2.  **Immunity**:

The Court's inquiry does not end here, however.  In addition to liability based on

ownership, custody, or *guarde* of the pipeline, the plaintiffs also allege that the State is liable for

negligence on the grounds that it "refused and/or failed to enforce governmental rules,

regulations and statutes, concerning the dereliction, abandonment and/or removal of ruined and

dangerous hydrocarbon related structures placed in waterways of this state and particularly,

pipelines connected to and/or associated therewith."  Complaint at ¶¶ XIV, XV.  Defendants

argue that there is no possibility of recovery based on this theory because such recovery is barred

by Louisiana Revised Statutes § 9:2798.1, which provides qualified immunity for policymaking

or discretionary acts of the State:

> Liability shall not be imposed on public entities or their officers or employees based
> upon the exercise or performance or the failure to exercise or perform their
> policymaking or discretionary acts when such acts are within the course and scope
> of their lawful powers and duties.

La. Rev. Stat. Ann. § 9:2798.1(B) (West 2009).

It is unclear which test the Louisiana Supreme Court would apply in determining whether

a particular act or omission is covered by section 9:2798.1(B):   (1) the *Berkovitz*[4] test used in

applying the Federal Tort Claims Act's discretionary function exception, adopted in *Fowler v.*

---

[4] *Berkovitz v. United States*, 486 U.S. 531 (1988).

*Roberts*, 556 So.2d 1, 15 (La. 1990) for analyzing the applicability of section 9:2798.1; (2) the

plain language of the statute, as seemingly advocated by the plurality in *Gregor v. Argenot Great*

*Central Insurance Company*, 851 So.2d 959, 967 (La. 2003) (criticizing *Fowler*); or (3) some

hybrid of the two.  *See In re Katrina Canal Breaches Consol. Litigation*, 629 F. Supp.2d 601,

609-613 (E.D. La. 2009) (citations omitted).  However, under either *Fowler* or *Gregor*,

immunity does not apply when a  "statute, regulation, or policy specifically prescribes a course

of action for an employee to follow."  *See Fowler*, 556 So.2d at 15 (quoting *Berkovitz*, 486 U.S.

at 536); *see also Gregor*, 851 So. 2d at 966, 968 (Sanitary Code provided no choice as to where

raw oyster warning must be displayed, and DHH had mandatory duty to enforce the Code).

Where a course of action is prescribed, "the employee has no rightful option but to adhere to the

directive.  If the employee had no discretion or choice as to appropriate conduct, there is no

immunity."  *Fowler*, 556 So.2d at 15  (citations and internal quotation omitted); *see also Gregor*,

851 So. 2d at 965 (defining "discretion" as entailing some latitude of choice).

       Here, the defendants argue that "[e]nforcement of the relevant laws and regulations, LSA

C.C. Art. 493 and La. R.S. 30:91, is a discretionary function and the State is therefore immune

from suit for failure to enforce any such regulation."  Rec. Doc. 44 at 9.  It is unclear why the

defendants selected Civil Code article 493 and section 30:91 of the Revised Statutes as the law

relevant to this claim.  Section 30:91 governs the process by which an oilfield site may be

declared orphaned and sets forth certain rules governing sites declared to be so orphaned.  La.

Rev. Stat. § 30:91.  It does not address the removal of abandoned or dangerous pipelines in state

waters, as alleged in the Complaint.[5]  Likewise, article 493 does not address the State's regulation of abandoned pipelines in waterways.  Rather, as discussed above in connection with ownership and *guarde*, it addresses the ownership of buildings and other constructions made on land belonging to another person.  La. Civ. Code art. 493.

Although the Complaint does not contain specific citations, it is not difficult to find several relevant statutes and regulations based on the plaintiffs' description.  For example, with regard to pipelines constructed on state water bottoms pursuant to a state right-of-way or lease, section 30:4(D) of the Revised Statutes requires that the assistant secretary of the Office of Conservation shall make any rules, regulations, and orders necessary to require that pipelines on state water bottoms conform to certain requirements, such as:  (1) that the owner or operator shall be responsible for burying and maintaining the line at the required depth; (2) that upon abandonment of a pipeline, the owner or operator shall be responsible for removing any related object above the mudline which may interfere with navigation, or shall adequately mark it; (3) that at regular intervals after abandonment of a pipeline, the owner or operator shall cause an inspection thereof if the assistant secretary so requires, and the assistant secretary shall so require if he determines that the public interest requires it; (4) that an owner or operator of a pipeline shall report any permanent abandonments; (5) that all field transmissions, flow, and gathering lines on state leases meet all U.S. Army Corps of Engineers requirements for burial and be

---

[5]  Plaintiffs do not cite any specific statute or regulation, but rather describe them by content:  "governmental rules, regulations and statutes, concerning the dereliction, abandonment and/or removal of ruined and dangerous hydrocarbon related structures placed in waterways of this state and particularly, pipelines connected to and/or associated therewith."  Complaint at ¶¶ XIV, XV.

marked and maintained so as to minimize undue influence with persons making other uses of state water bottoms, including mariners and fishermen; (6) that if inspection reveals equipment above the mudline, the owner shall be responsible for its removal to avoid its constituting an obstruction, which may interfere with other uses such as navigation and fishing, or, if the assistant secretary so rules, mark it according to Coast Guard regulations; and (7) that the owner and operator shall promptly report any abandoned equipment.  *See* La. Rev. Stat. § 30:4(D).

With regard to other pipelines, section 30:4(E) requires that the assistant secretary shall make all necessary rules, regulations, and orders necessary to require that such pipelines "shall be buried, maintained, or removed from the right-of-way or lease" according to certain requirements, such as:   (1) that "[w]hen a pipeline is abandoned, the commissioner [of conservation] shall make a preliminary investigation to determine if the line...constitutes an obstruction which may unduly interfere with other uses of state waters or water bottoms....;" and (2) that field transmission, flow, and gathering lines shall be marked, maintained, and removed after abandonment in a proper manner, to be approved by the commissioner, so as to minimize undue interference with persons making other uses of state waters and water bottoms, including mariners and fishermen.  *See* La. Rev. Stat. § 30:4(E); *see also* La. Rev. Stat. § 30:4(F).

Pursuant to these statutes, the Office of Conservation, pipeline division, has promulgated numerous regulations concerning underwater obstructions.  *See, e.g.*, La. Admin. Code, tit. 43, § 309.  For example, one such regulation provides that: "All facilities (other than field transmission, flow or gathering lines on state leases or right-of-way):   1) located above the mudline and in less than 20 feet of water; and 2) constituting an obstruction, shall be removed

12

within 90 days after abandonment or as soon thereafter as practicable by the responsible person

or persons." La. Admin. Code, tit. 43, § 311(A).[6]

Many of these statutory and regulatory requirements would be considered mandatory

under the reasoning of either *Fowler* or *Gregor*; thus, a failure of the State or its employees to

enforce such requirements would state a claim for tort liability that would not necessarily be

---

[6]  Relevant to pipelines, section 311 further provides:

B. Each person responsible for a facility shall notify the assistant secretary of its abandonment in writing no later than 30 days after such facility is abandoned. Such notice shall include:

1. a description of the facility including its location, size and depth of superadjacent waters, and a statement whether the facility will be removed, buried, or remain in place; and

2. the nature and location of all portions of the facility then situated above the mudline.

C. Upon learning thereafter that any portion of a facility abandoned under §311.B is protruding above the mudline in depths of water less than 20 feet and constituting an obstruction, the person or persons responsible shall notify the assistant secretary and remove or mark that portion of the facility within 90 days or as soon thereafter as practicable; provided, however, field transmission, flow and gathering lines on state leases or right-of-way shall not be required to be removed.

D. For purposes of this rule, a facility shall be deemed abandoned if it has not been actually used for the bona fide movement, processing  or production of hydrocarbons within the preceding six months, provided that a facility shall not be deemed abandoned if:

1. the owner or operator thereof reasonably intends to use the facility for the movement, processing or production of hydrocarbons in the reasonably foreseeable future; or

2. the owner or operator has applied for but not received permission from the relevant jurisdictional authority to abandon the facility.

subject to immunity under section 9:2798.1.  *See Fowler*, 556 So. 2d at 16-17 (" LSA–R.S. 32:403.2 is intended to protect the public by limiting licensing of physically handicapped persons to those who have medical reports indicating that they are capable of safe driving....By waiving medical examinations for all handicapped drivers applying for renewal licenses, the Department of Public Safety did not act in accord with its statutory mandate."  Such waivers were not discretionary and not grounded in policy.); *Gregor*, 851 So. 2d at 966 ("Section 23:006-4 of the Sanitary Code requires that [raw oyster warning be displayed] 'at point of sale.'... [Thus], no policymaking act or discretionary act is involved in determining where the warning must be given; it must be given AT THE POINT OF SALE. * * * DHH had a mandatory duty to properly enforce the sanitary code. * * *  Mr. Robinson's decision in this case, that the warning over the oyster bar was in compliance with § 23:006-4, was not a decision grounded in social, economic, or political policy.  It was operational negligence in enforcing the sanitary code.  When the government acts negligently for reasons unrelated to public policy consideration, it is liable to those it injures.").

The defendants complain that the plaintiffs have failed to allege any specific acts on the part of the State that would refute the defense of section 9:2798.1 immunity.   However, as the party invoking jurisdiction, it is the defendants who bear the burden here.  This burden is particularly heavy where, as here, jurisdiction is invoked on the basis improper joinder.  *See, e.g., Campbell*, 509 F.3d at 669.  Moreover, in this instance, the defendants' theory of improper joinder rests on an affirmative defense, not on the plaintiffs' failure to articulate a claim or upon evidence showing that the plaintiffs have misstated facts.  The burden of establishing this

defense rests on the defendants.  *See, e.g., Johnson v. Orleans Parish School Bd.*, 975 So.2d 698, 710 ("[D]efendants raised the 'discretionary function' immunity as an affirmative defense in their answers and pleadings.  As such, the defendants had the burden of proof on this affirmative defense."), *writ denied*, 983 So.2d 1289 (2008).  Here, the defendants have offered no evidence on the issue of immunity.  Nor is the defense evident from the face of the complaint.[7]  Indeed, under *Fowler* and *Gregor*, the Court finds that there is a reasonable basis for predicting "that the plaintiff might be able to recover" against the State.  *Smallwood*, 385 F.3d at 573.  Thus, the defendants have failed to carry their burden of demonstrating "that there is no possibility of recovery by the plaintiff against an in-state defendant."  *Id.*

## III.  CONCLUSION:

For all of the foregoing reasons, the Court finds that the defendants have failed to demonstrate that the State of Louisiana was improperly joined.  Thus, this Court is without subject matter jurisdiction.  Accordingly,

**IT IS ORDERED** that:

1) Plaintiffs' Motion to Remand (Rec. Doc. 20) is hereby **GRANTED**; and

2) this matter is hereby **REMANDED** to the Twenty-Fifth Judicial District Court for the

---

[7]  In the context of Rule 12(b)(6), dismissal on the basis of an affirmative defense is appropriate only if the defense appears on the face of the complaint.  *See, e.g., EPCO Carbon Dioxide Prods., Inc. v. J.P. Morgan Chase Bank, N.A.*, 467 F.3d 466, 470 (5th Cir.2006) ("Although dismissal under rule 12(b)(6) may be appropriate based on a successful affirmative defense, that defense must appear on the face of the complaint."); *see also Cassanova v. Marullo*,1994 WL 247151 (E.D. La. 1994) ("Further, qualified immunity is an affirmative defense which must be pleaded by defendants....Thus, plaintiffs' complaint may only be dismissed on grounds of qualified immunity if 'the defense clearly ... appears on the face of the pleading.' Wright & Miller, § 1357, pp. 348–49.").

Parish of Plaquemines from whence it came.

New Orleans, Louisiana, this 29th day of November, 2012.

_____
**KURT D. ENGELHARDT**
**United States District Judge**